UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

SHELLEY FEDERICO, et al.,

    Plaintiffs,

v.                                                    Case No.: 2:12-CV-80

LINCOLN MILITARY HOUSING, LLC, et al.,

    Defendants.

## MEMORANDUM ORDER

This consolidated action involves claims of injury and damage allegedly arising from mold in military housing provided by certain Defendants under long-term agreements with the United States Military. The matters raised by the various actions received coverage by the media, including extensive coverage by local television station, WTKR. As a result, Defendants issued subpoenas to WTKR and its reporter Laurie Simmons, seeking information related to the litigation. Both Simmons and WTKR filed a Motion to Quash (ECF No. 226) the subpoena and the parties, by counsel, appeared for oral argument. For the reasons stated on the record, the Court GRANTED in part and DENIED in part the motion, and issues this Memorandum Order to articulate the view of the law underlying this decision.

As written, Defendants' subpoenas requested far more information than necessary or relevant to the present actions. For example, the subpoenas define "Home" and "Homes" as "each and every home owned or managed by Defendants during the period covered by the Consolidated Actions." (ECF No. 226-1 at 7 and ECF No. 226-2 at 7). These definitions, which are used throughout the subpoenas, are unnecessarily broad – encompassing properties owned or managed by Defendants nationwide, far beyond the scope of WTKR's localized coverage.

1

Compounding this problem, these "definitions" are incorporated in several other definitions and queries. For example, the definition of "Incident" and "Condition" both refer to excess moisture in any "Home," and the definition of "Work," relates to the repair (for any unspecified reason) of any Home. (ECF No. 226-2 at 7-10). Because the definitions are incorporated in various enumerated requests, the subpoenas encompass material far outside the bounds of relevance. In addition, the subpoenas sought discovery of not just material and communications gathered by WTKR from the parties in this case, but also its communication with Plaintiffs' counsel, id. at 7, other media outlets, id. at 11, government agencies, id. at 9, as well as blog, internet and social media posts, id. Seeking to limit, or avoid altogether their duty to produce the subpoenaed material, WTKR and Simmons moved to quash the subpoenas.

## I. WTKR's Claim to a Reporter's Privilege

In their briefing, the parties argue at length about whether news agencies enjoy a qualified or constitutional privilege under the First Amendment to resist complying with Defendants' broad discovery requests. This so-called "reporter's privilege," according to WTKR and Simmons, should prevent Defendants' attempt to make "the station and its employees [their] investigators." (ECF No. 227 at 12). According to Defendants, however, there is no privilege as they "are not seeking the identification of a confidential source." (ECF No. 248 at 15). For the reasons that follow, the Court is persuaded that WTKR is entitled to some measure of protection under the Fourth Circuit's interpretation of Supreme Court precedent, but nevertheless must respond to Defendants' subpoenas as limited below.

Admittedly, "the judicial history of the First Amendment journalist privilege is not notable for its clarity." United States v. Lindh, 210 F. Supp. 2d 780, 782 (E.D. Va. 2002). It begins with Branzburg v. Hayes, 408 U.S. 665 (1972), "where the Supreme Court majority

2

considered and expressly rejected the creation of a First Amendment journalist privilege in criminal cases." Lindh, 210 F. Supp. 2d at 782. Justice Powell joined the majority opinion in Branzburg, but also wrote a separate concurring opinion "to emphasize . . . the limited nature of the Court's holding." Branzburg, 408 U.S. at 709. He wrote:

> [I]f the newsman is called upon to give information bearing only a remote and tenuous relationship to the subject of the investigation, or if he has some other reason to believe that his testimony implicates confidential source relationship without a legitimate need of law enforcement, he will have access to the court on a motion to quash . . . .

Id. at 710.

Justice Powell's concurrence "did not disassociate his views from the main, and quite unequivocal, holding of the majority opinion (which Justice Powell joined) that there was no reportorial privilege under the First Amendment." United States v. King, 194 F.R.D. 569, 578 (E.D. Va. 2000); see also United States v. Sterling, 724 F.3d 482, 495 (4th Cir. 2013) ("Justice Powell's concurrence expresses no disagreement with the majority's determination that reporters are entitled to no special privilege that would allow them to withhold relevant information about criminal conduct without a showing of bad faith or other such improper motive . . . ."). Rather, he merely underscored the protections already enjoyed by journalists under the First Amendment. "[T]o Justice Powell, the need for protection was to be judged on a case-by-case basis, with an appropriate balance to be struck based on the specific facts of each case." King, 194 F.R.D. at 578.

As demonstrated by the foregoing citations, Justice Powell's concurrence has had significant influence on the development of First Amendment protection for reporters among the Circuits. In one of the most recent Fourth Circuit opinions on the issue, the Court reiterated Branzburg's central premise that "[t]here is no First Amendment testimonial privilege, absolute

3

or qualified, that protects a reporter from being compelled to testify . . . in criminal proceedings about the criminal conduct that the reporter personally witnessed or participated in, absent a showing of bad faith, harassment, or other such non-legitimate motive . . . ." Sterling, 724 F.3d at 492. Despite arguments that the lack of such a privilege "would chill the future newsgathering abilities of the press, to the detriment of the free flow of information to the public" – the same argument offered by WTKR here – both Branzburg and Sterling rejected that rationale in the context of criminal cases. See id. at 496-96; Branzburg, 408 U.S. at 691. Sterling expressly considered whether the Fourth Circuit in fact recognized a limited or qualified reporter's privilege with the three part test it enunciated in LaRouche v. National Broadcasting Co., Inc., 780 F.2d 1134 (4th Cir. 1986). But, as the court noted, LaRouche considered "a civil litigant's right to compel evidence from a reporter and the First Amendment claim of the press to protect its newsgathering activities." Sterling, 724 F.3d at 496. There, the Fourth Circuit specifically recognized a limited reporter's privilege "in this *civil* context." Id.

The privilege established in LaRouche requires a party seeking disclosure to meet a three-part test which examines: "(1) whether the information is relevant, (2) whether the information can be obtained by alternative means, and (3) whether there is a compelling interest in the information." Id. at 496-97; (quoting LaRouche, 780 F.2d at 1139). This limited protection for reporters resisting civil discovery was consistent with Branzburg, the Fourth Circuit held, because "the public interest in effective criminal law enforcement is absent." Sterling, 724 F.3d at 497 (quoting Zerilli v. Smith, 656 F.2d 705, 711-12 (D.C. Cir. 1981)). However, the Fourth Circuit went on in Sterling to emphasize the "critical" distinction between civil and criminal cases in this context, recognizing that "[s]ubpoenas in criminal cases are driven by the quite different and compelling public interest in effective criminal investigation

4

and prosecution, an interest that is simply not present in civil cases." Sterling, 724 F.3d at 497-98.

In re Shain, 978 F.2d 850 (4th Cir. 1992) on the other hand, had clearly rejected any sort of qualified or limited reporter's privilege "grounded on the First Amendment, against being compelled to testify in [a] *criminal* trial." Id. at 497 (quoting Shain, 978 F.2d at 851). The reporters in Shain were held in contempt for refusing to comply with subpoenas to testify in the criminal trial of a former state senator whom they had interviewed. Id. In its analysis, the Fourth Circuit in Sterling observed that despite two sister-circuits having extended a LaRouche-like three-part test to criminal proceedings, the Shain court "declined to follow that path." Id. (citing United States v. Caporale, 806 F.2d 1487, 1503-04 (11th Cir. 1986) and United States v. Burke, 700 F.2d 70, 76-77 (2d Cir. 1983)). Instead, the court refused to recognize a "broad privilege," and following Branzburg, held that "absent evidence of governmental harassment or bad faith, the reporters have no privilege different from that of any other citizen not to testify about knowledge relevant to a criminal prosecution." Id. (quoting Shain, 978 F.2d at 852).

Thus, absent evidence of wrongdoing, such as harassment or some other improper motive, there is simply no reporter's privilege in criminal proceedings. It is also clear, however, that "an overwhelming number of lower courts, including this court and the Fourth Circuit, have recognized a newsperson's privilege from revealing their confidential news sources in civil proceedings." Stickels v. Gen'l Rental Co., Inc., 750 F. Supp. 729, 731 (E.D. Va. 1990) (citing cases). This privilege, stemming from the discussion in Branzburg, "and particularly from the concurring opinion of Justice Powell," requires the district court to undergo the balancing of interests as outlined by LaRouche. Id.

What remains less clear is whether the limiting principles of LaRouche apply to civil

cases in which the discovery does not seek disclosure of confidential sources, and is otherwise consistent with ordinary obligations of non-parties responding to properly framed subpoenas. See e.g., United States v. King, 194 F.R.D. 569, 584 (E.D. Va. 2000) ("[T]he predicate for conducting the balancing of factors identified in LaRouche is . . . the circumstance in which both confidentiality of the source material and vexation or harassment is demonstrated . . . ."); but see Stickels, 750 F. Supp. at 732 (analyzing cases and adopting a "qualified privilege for nonconfidential information and materials acquired by the press in the course of their newsgathering process . . . ."). Sterling, unfortunately, provides little guidance on this more nuanced sub-query of the reporter's privilege in civil cases.

Defendants here maintain that WTKR is not seeking to protect any confidential information – an allegation which is not disputed. As a result, they argue that the LaRouche balancing factors do not apply.[1] For support, Defendants rely heavily on Shain, which concluded that "the absence of confidentiality or vindictiveness in the facts of this case fatally undermines the reporters' claim to a First Amendment privilege." Shain, 978 F.2d at 853. But, as carefully outlined by the Fourth Circuit's recent opinion in Sterling, there is a significant difference between the interests present in criminal cases (like Shain), and those in civil cases, (like LaRouche). Notably, Shain and the other criminal cases relied upon by Defendants recognize a much more limited "privilege" consistent with the Supreme Court's still binding precedent in Branzburg. See Sterling, 724 F.3d at 493-94.

Given this important distinction, and absent a clear answer, the Court is persuaded by the reasoning in Stickels v. General Rental Co., Inc., 750 F. Supp. 729, 732 (E.D. Va. 1990). After initially recognizing a "newsperson's privilege from revealing their confidential news sources in

---

[1] Defendants did not ground their opposition to the Motion to Quash exclusively on this legal proposition, but also argued the LaRouche factors favored production.

6

civil proceedings," the court in Stickels went on to apply the privilege in the context of non-confidential information. The court observed that many opinions which have recognized the existence of a qualified privilege have applied it to both confidential and non-confidential sources, noting that "[i]t is generally the opinion of these courts that the potential burden of the free flow of information caused by the disclosure of nonconfidential material is equivalent to the burden of revealing confidential information." Id. (citing cases). The Stickels opinion noted the Fourth Circuit's tacit approval of a "balancing of interests" test to determine whether reporters could be forced to testify as to non-confidential information, and adopted a "qualified privilege for nonconfidential information and materials acquired by the press in the course of their newsgathering process." Id. (citing United States v. Steelhammer, 561 F.2d 539, 540 (4th Cir. 1977) (en banc) (relying on reasoning of United States v. Steelhammer, 562 F.2d 373, 376-78 (4th Cir. 1976) (Winter, J., dissenting))). See also Shain, 978 F.2d at 854 (Wilkinson, J., concurring) (citing Stickels for the proposition that "[t]he balancing test has been applied within this circuit to situations involving nonconfidential materials."); Hatfill v. NY Times Co., 242 F.R.D. 353, 356 (E.D. Va. 2006) (same); Penland v. Long, 922 F. Supp. 1080, 1084 (W.D.N.C. 1995) (examining Fourth Circuit precedent and concluding "[t]hese opinions suggest that the journalists' qualified privilege . . . encompasses nonconfidential information from nonconfidential sources, and that the LaRouche balancing test is to be applied in a civil case even in the absence of confidentiality or vindictiveness.").

While it is clear that the First Amendment "does not provide the press with an absolute shield from the legal process," some protection is nevertheless necessary to defend this nation's commitment to "a free and uninhibited press contributing to the robust and unfettered debate characteristic of our society." Stickels, 750 F. Supp. at 731. As Justice Stewart once observed,

the need for a reporter's privilege extends beyond the "parochial personal concerns of particular newsmen or informants," to society's broader needs in the free flow of information. Branzburg, 408 U.S. at 726 n.2 (Stewart, J., dissenting). Stated another way, "unrestricted litigant access to press files would create socially wasteful incentives for press entities 'to clean out files containing potentially valuable information lest they incur substantial costs' of subpoena compliance, and would risk 'the symbolic harm of making journalists appear to be an investigative arm of the judicial system . . . .'" Chevron Corp. v. Berlinger, 629 F.3d 297, 307 (2d Cir. 2011) (quoting Gonzales v. Nat'l Broadcasting Co., Inc., 194 F.3d 29, 35 (2d Cir. 1999)). Accordingly, though by no means an "absolute shield," the LaRouche balancing test, as applied by this Circuit and elsewhere, is a reasonable means to balance the need for information in a given civil case against the First Amendment interests of the press regardless of the confidential nature of the information sought.

Applying the LaRouche factors to the instant case, it is apparent that while WTKR may enjoy a limited privilege as part of its newsgathering function, it must still respond to the subpoenas as limited by the court. The first factor to be considered is whether the information sought is relevant to the present action. Here, certain materials sought by Defendants – for example, any information regarding the condition of the homes or individual plaintiffs involved in the consolidated actions – is clearly relevant. It relates specifically to the properties and parties in the underlying actions, and encompasses evidence that could play an important role in the litigation, including video tape or contemporaneous written communications by the parties.

Likewise, LaRouche's second factor – whether the particular information sought may be obtained by other means – favors limited production. Specifically, some of the information sought is such that it may only be obtained through WTKR and Simmons. For example, relevant

outtakes and other photographic or video footage obtained, which may document the condition of the residences and plaintiffs at the time the actions were instituted, may only be obtained from WTKR. The same may be said for any contemporaneous communication between WTKR and the individuals or entities enumerated in the court's ruling, including the consolidated Plaintiffs, their attorneys and contractors known to have worked on affected homes. There is no threat to confidential sources as WTKR denied possessing any confidential information. Any difficulty in collecting the required material as limited by the Court's ruling is speculative and can be addressed – if necessary – after production.

Lastly, there must be a compelling interest in the information sought. Here, contemporaneous video or photographic footage, as well as the communications between the listed individuals and WTKR, could play a role in the outcome of these proceedings. For example, witness testimony could provide insight into the condition of the residences leased by Defendants. Contemporaneous video and photographic footage, if any exist, "provide detailed and unusually credible evidence, beyond that possible by even the most reliable testimony." Stickels, 750 F. Supp. at 732. This information would only be available from WTKR.

Likewise, applying the same three factor analysis, the Court is not persuaded that Defendants have made a compelling showing of need for blog or social media posts by Simmons or the station, or for documents from correspondents who are not parties to the litigation, including communications with state or other government agencies, the Navy, or other media outlets.

Accordingly, while the Court is of the opinion that WTKR and its reporter Simmons enjoy some measure of protection under the First Amendment, after balancing the competing interests in this case, the needs of Defendants in certain information outweighs any such

protection. Thus, for the foregoing reasons, and those articulated at the hearing, WTKR's Motion to Quash is GRANTED in part and DENIED in part, and the subpoenas are to be limited to require the following material be produced:

> Any footage of any kind, as well as any inspection or test results in WTKR's possession, relating to any of the plaintiffs or residences involved in the Consolidated Actions must be produced. Additionally, any relevant document (including e-mail, but not social media postings or reporter notes) must be produced, limited in scope to the following search terms: Federico, Chan, Brandsema, Harding, Sulligan, Delorey, Coleman, Caldwell, French, Pinto, Shoemaker, PuroClean, Belinsky, and Bailey.

To the extent the subpoenas sought additional information, the Court GRANTS IN PART the Motion to Quash. The Clerk is DIRECTED to forward a copy of this Order to all counsel of record.

It is so ORDERED.

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

August 13, 2014